FILED

In the United States District Court
For the Eastern District of Virginia
Alexandria Division

2013 APR -1 P 3: 07

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Kim Y. Kelly
5550 Columbia Pike #310
Arlington, Virginia 22204
(571)312-2315

v.

Civil Action No. 1:13cv411 - TSE/TCB

The George Washington University
2033 K Street NW Suite 320
Washington, DC 20052
(202) 994-1000

**COMPLAINT**

### A. Grounds for Jurisdiction

This court has jurisdiction in matters pursuant to Title VII of the Civil Rights Act of 1964, The American with Disabilities Act (ADA),The Age Discrimination in Employment Act of 1967 (ADEA) and The Civil Rights Act of 1991 and other federal level discrimination laws. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. Section 2000e (5). Equitable and other relief are also sought under 42 U.S.C. Section 2000e (5)(g). Jurisdiction is also based on 28 U.S.C. Sections 1331, 1343 and 42 U.S.C. Sections 1981 et seq. Where employment discrimination based upon age is alleged, jurisdiction is conferred by 29 U.S.C. Sections 626(c) (1) and 626(e) and appropriate relief is also sought.

### B. Facts of the Case

I allege that the defendant, The George Washington University (subsequently referred to as the university), committed several employment discriminatory acts, as indicated below, based on my race (African American), Age (40+), color (brown skinned) while employed on The George Washington University Virginia Campus in Ashburn, Virginia from approximately October, 2006 up until February 9, 2009 in violation of the Title VII of the Civil Rights Act of 1964, The Equal Pay Act of 1963 (EPA), The Age Discrimination in Employment Act of 1967 (ADEA) and The Civil Rights Act of 1991. (I was on Family Medical Leave from February 10, 2009 until May 31, 2009):

1. The university failed to provide a job promotion for performing higher level Chief Information Security Officer since my tenure back to October 2001( plaintiff was orally promised by chief technology officer in October 2006 that a promotion was forthcoming on 8/14/2007). I was also led to believe that a promotion was forthcoming by my former supervisor, (K.T.) on June 19, 2007, October 31, 2007, December 11, 2007, March 27, 2008, and August 18, 2008. Promotional opportunities were provided and/or created for team members who were of difference races (white), colors (light complexion), and ages (under 40). Examples of promotions include (J.G) (white male under 40) who was hired in the winter of 2006 and promoted the summer of 2007, (S.L) (light complexion under 40) who started as a student intern and promoted to a Jr. Computer Forensic Information Security Systems Engineer and (A.B.H) (white female under 40) who went from Network Security Systems Engineer in 2002 to Assistant Director of Security Systems Operations to (estimated Spring 2006) to Associate Director (announced on October 23, 2008).

2. Supervisor (K.T) created a barrier for a potential promotional employment opportunity at another local university based on my race (African American) in March 2007 by referring another person (white for the opportunity that would have resulted in a potential promotion. My former supervisor (K.T) advised that she did not want to lose me.

3. My former supervisor (K.T) and her superior (G.J) failed to follow GWU's internal policy which would have resulted in me obtaining a temporary higher role and higher pay for taking on chief information security officer duties from January 12, 2009 and prior but followed the policy, for a team member of another race (white), color (white), and younger age (<40) which provided her with a temporary higher role and I believe higher pay.

4. My former supervisor (K.T) and her superior (G.J) failed to provide a lump sum bonus for going above the call of duty for assignments completed above the network security engineering position, that is chief information security officer duties, but provided a lump sum bonus for a white male on the team on May 15, 2008 for going above the call of duty.

5. My former supervisor (K.T) physically segregated me from the main campus team and repeatedly denied my request (after the year 2006 and forward) to permanently move from the Virginia campus and work permanently on the main campus in Washington, DC but allowed (D.K) a white male under the age of 40, hired onto the team in March 2008 to permanently work on the main campus although the he was hired to work permanently from the Virginia campus per the white male's choice. D.K (white male) was allowed to work permanently from the main campus in Washington, DC from March 2008 up until the time of my constructive discharge on July 10, 2009 and probably beyond. My

requests were denied prior to and after January 27, 2009 (the last request to relocate back to the main campus was on June 5, 2009). D.K advised me in September 2008, that he would quit before moving to the Virginia campus.

b. My former supervisor (K.T) physically segregated me from the main campus team and denying my request before and after January 27, 2009 (the last request to relocate back to the main campus was on June 5, 2009) to permanently move from the Virginia campus and work permanently on the main campus in Washington, DC which would have provided me access to student resource workers as the Virginia campus was not attractive to student workers from the DC campus.

7. The university committed employment discrimination through reverse wage discrimination by not providing equal pay for equal work. During my tenure with the university from October 2001 until February 2009, I performed duties consistent with chief information security officer position yet did not receive wages equal to the white female (K.T) who occupied the position and who was often out of the office.

8. Retaliated against me for engaging in protected activity, after filing an internal EEO complaint on October 31, 2008 and making the university aware of my intent to and actually filing an employment discrimination complaint with the U.S. Equal Employment Opportunity Commission (approximately January 19, 2009). Retaliatory actions included but not limited: a work environment that became increasingly hostile (January 27, 2009, February 2, 2009), interference with my ability to accomplish agreed upon written performance goals that were set on October 30, 2008 (on January 27, 2009 and January 29, 2009), a threat (on January 12, 2009), false accusation by internal EEO (on January 13, 2009), emotional distress (on January 27, 2009 and January 29, 2009 and afterward), less desirable work assignments(January 29, 2009), sabotage of work, (retaliatory harassment by supervisor and team members (January 28, 2009) and intimidation by internal EEO (January 13, 2009), denied my requested for new work assignment specific training (on February 4, 2009) necessary to carry out a new assignment given after filing discrimination complaint.

**I, the plaintiff was on Family Medical Leave from February 10, 2009 until May 31, 2009 for conditions related /intensified due to employment discrimination and work environment. The discrimination and retaliation continued after my return to work on June 1, 2009.**

In addition to the above acts of alleged employment discrimination, I, the plaintiff allege that the defendant, The George Washington University **retaliated against me for engaging in protected activity** in violation of the Title VII of the Civil Rights Act of

1964. The Equal Pay Act of 1963 (EPA), The Age Discrimination in Employment Act of 1967 (ADEA) and The Civil Rights Act of 1991 and others as stated above. (I was on Family Medical Leave from February 10, 2009 until May 31, 2009) through the following acts after returning from Family Medical Leave and after filing an external complaint with the EEOC:

9. Continued to deny my request to permanently move from the Virginia campus and work permanently on the main campus in Washington on June 5, 2009 but continued to allow a white male (initials D.K) on the team who was hired to work permanently on the Virginia campus in March 2008 to work permanently on the main campus in Washington, DC as this was the white male's (D.K's) choice from March 2008 and up to the time of my constructive discharge in July and probably beyond.

10. Denied my request to use of a leave of absence benefit as requested on June 9, 2009 and on July 7, 2009, although university documentation made a leave of absence available to cover medical leave and was suggested as an option by the expert human resources official (initials S.V).

11. My supervisor (K.T) interfered with my ability to meet my agreed upon written performance goals set on October 30, 2008 through the assignment of menial and non-performance goal related assignments assigned on June 4, 2009 and after and prior to FMLA leave February 10, 2009.

12. My supervisor (K.T) placed me under the authority of another team member (A.B.H) on June 5, 2009 in which my supervisor knew that this person had treated me with discrimination and hostility in the past and whom I complaint about to my supervisor and her superior several times prior to filing a discrimination complaint(May 8, 2007 and prior).

13. Harassment by internal EEO personnel and certain members of the employee relations department in June 9, 2009 because of my desire to use the leave of absence benefit for medical leave, as allowed by university documentation, and suggested as an option by the human resources expert instead of the American with Disabilities Act (ADA).

14. Forced me to use the American's with Disabilities Act on 6/10/09 to work a part time schedule when a leave of absence was desired, requested, and available according to university documentation for medical leave, and suggested by the human resource expert.

15. Allowed the internal EEO director to have physical access to my doctor's note on June 9, 2009 to work on a part time basis thus invading my medical privacy. I did not apply for ADA and the internal EEO personnel should not have had access to my medical documentation when a leave of absence was desired, requested, and available according to university documentation for medical leave, and an option based on the recommendation from the human resources expert.

16. My former supervisor and her superior's superior, (K.T. and D.S) increased surveillance and monitoring (6/17/09, 6/19/09, 6/23/09), created a hostile work environment(6/4/09, 6/09/09, 6/23/09) and, 6/19/09), harassed me by giving confusing/conflicting/discriminatory standards to complete new assignment, (6/2/09, 6/4/09, and 6/19/09, threats(6/19/09), required unreasonable time frame to complete new assignment(6/19/09), scrutinized new work which never occurred prior to the filing of discrimination complaint(6/19/09), invaded my personal space making me feel threatened(6/19/09), forbade me to ask questions about new work assignments, and forbade me to communicate with others necessary to carry out new work assignments(7/8/09), and falsely accused me of performance deficiencies(7/16/09).

17. (A.B.H.) denied my ability to carry over vacation time from fiscal year 2009 to fiscal year 2010 on 6/25/09, which had been allowed before filing a discrimination complaint, but a white male (initials D.K) was permitted to carry vacation over from fiscal year 2009 to fiscal year 2010.

18. The A.V.P of Human Resources (M.A) denied my request to transfer out of my department after complaining about the continued discrimination and retaliatory behavior. On July 2, 2009 the A.V.P of Human Resources advised during that meeting that the university did not want to set precedence with this request although a precedent had been set by allowing a white female (M.R) to transfer out of her department several months before due to issues with her supervisor. The university's human resources department subsequently wrote, that the transfer was denied. "Because it did not conform with GW's normal job application process "but allowed a white female from another university department that was governed by human resources to transfer based on my conversation with this white female (initials M.R) on July 7, 2009.

19. Constructively discharging me on July 10, 2009 through several acts of retaliation, continued discrimination, and a severe hostile work environment after returning to work June 1, 2009. Examples of continued discrimination and retaliation included but was not limited to false accusations of performance deficiencies, increased surveillance and monitoring, creation of a hostile work environment, harassment, confusing/conflicting/discriminatory standards to complete new assignment, threats,

unreasonable time frame to complete new assignment, scrutiny of new work assignments which never occurred prior to the filing of discrimination complaint, the invasion of personal space making me feel threatened, forbidden to ask questions about new work assignments, and forbidden to communicate with others necessary to carry out new work assignments but failed to terminate white employee (J4) for hacking into external system violating federal law and changing test score (around 2005/2006), insubordination by white male (E.M) employee shortly before receiving a lump sum bonus granted( 2008), and insubordination by white female employee (K.T) who was instructed to return to office from a business trip to Las Vegas but did not return as instructed(2007).

20. My supervisor (K.T) and her superior (G.J) violated university policy and procedures by interviewing a white male (A.D) for my position before it could be posted and fairly made available to the public and internal candidates on July 17, 2009. I, the plaintiff was advised by one of the interviewee (J.H) that this candidate was told, "welcome aboard" during the interview process on July 17, 2009 which shows that the retaliation and constructive discharge was a concerted effort by the university.

### Remedies Sought

I am seeking the following remedies from the court:

### Injunctive Relief

1. Prevent the defendant from using the employee discrimination/Human Resources complaint process to intimidate and/or retaliate against employees seeking to exercise their rights against employment discrimination in good faith.

2. Prevent the defendant from manufacturing performance issues/deficiencies against those who exercise their rights pertaining to employment discrimination and other employment issues.

3. Prevent the defendant from engaging in employment discriminatory practices and retaliation.

4. Allow those who complain of employment discrimination, retaliation, and/or human resource issues to have a witness attend meetings if desired after complaining and/or exercising rights and without reprisal to any party.

In addition, I am seeking the following remedies from the court:

### Costs plus Interest

1. Difference in salary between the network security engineer position and the chief information security officer's position between the years 2001 through 2009.

2. Reimbursement for loss of vacation and sick time used for family medical leave use from February 10, 2009 through May, 2009.

3. Court costs and associated fees including attorney fees if applicable.

### Reimbursement of Funds Paid/Lost plus Interest

1. Loss of education benefit for my dependent to further education at GWU.

2. Loss of education benefit for myself to further education at GWU.

3. Costs plus interest for monies paid for son's education after constructive discharge and beforehand

4. Loss of funds in 403b plan plus interest, penalties, and matching paid for son's education prior to constructive discharge and after. Also for funds withdrawn and used during unemployment period.

5. Difference in vacation, sick, holiday, and time off between university and subsequent employment and reimbursement for pay lost in each category.

6. Restoration to a promoted position without reprisal from the university


### Compensatory Damages

1. Loss of salary, benefits, and insurance (for time of unemployment and difference in subsequent jobs)

2. **Pain and Suffering**

1. Emotional distress and depression

2. Damage to reputation and humiliation for having to disclose constructive discharge to subsequent potential employers.


### Punitive Damages

1. Punitive damages and any other damage the court deems just and fair.

I am seeking, request, and claim a trial by jury.

**Administrative Remedies Exhausted**

I. the plaintiff, in addition to talking with the direct supervisor about the matter, her superior, filing of internal discrimination complaints, applied to several internal jobs, requested a job transfer etc, I have exhausted the following administrative remedies pertaining to the case prior to filing in court:

Filed an external discrimination complaint to the U.S. Equal Employment Opportunity Commission in January 2009. A Right to Sue Letter from the U.S. Equal Employment Opportunity Commission was sent on January 31, 2013; **(see Exhibit 1)**

SIGNATURE _Kim Y. Kelly_

**Name (Printed):** Kim Y. Kelly

**Pro Se**

**Address:**

5550 Columbia Pike #310
Arlington, Virginia 22204

**Phone Number:**
(571)312-2315

EEOC Form 161 (11/09)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kim Y. Kelly<br>5550 Columbia Pike<br>Apt. #310<br>Arlington, VA 22204 | From: | Washington Field Office<br>131 M Street, N.E.<br>Suite 4NW02F<br>Washington, DC 20507 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2009-00642 | Yofi D. Weinberg,<br>Enforcement Supervisor | (202) 419-0756 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)      Mindy E. Weinstein,      JAN 31 2013
                   Acting Director          *(Date Mailed)*

cc:  Daniel Levenson, Esq., EEO Associate
     Department of EEO, George Washington University
     2033 K St. NW Suite 320
     Washington DC 20052